UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVERETTE HIGHBAUGH,

    Plaintiff,

v.

CITY OF VALLEJO, JOSH CAITHAM, KEVIN ROSE, KEVIN BARRETO, and TERRY SCHILLINGER,

    Defendants.

No. C 20-03911 WHA

**ORDER DENYING MOTION FOR ATTORNEY'S FEES AND VACATING HEARING**

**INTRODUCTION**

    Plaintiff was charged and tried for murder and attempted murder. After being acquitted of all charges, plaintiff brought this Section 1983 action against detectives with the Vallejo Police Department and the city itself. Plaintiff alleged that defendants violated his constitutional rights when a detective's report failed to note relevant, exculpatory text messages recovered from a victim's cellphone, even though all of the underlying evidence was timely produced, without alteration, to plaintiff's criminal defense counsel. An order granted summary judgment to defendants on all claims. Now, defendants move to recover their attorney's fees, arguing that plaintiff's action was frivolous. This order finds the motion suitable for disposition on the papers, so the hearing is **VACATED**. For the following reasons, the motion is **DENIED**.

**STATEMENT**

The order granting summary judgment for defendants detailed the facts of this case. Very briefly, on November 23, 2016, plaintiff Everette Highbaugh was arrested for the murder of Kenesha Jackson, the mother of his three children, and attempted murder of Brad David, Jackson's boyfriend, in Jackson's home at 648 Virginia Street in Vallejo. Among other evidence collected from the crime scene, including statements from two of Jackson's neighbors and statements from David himself, Vallejo police collected David's cellphone.

After taking plaintiff into custody, defendants Kevin Rose and Josh Caitham, detectives with the Vallejo Police Department (VPD), interrogated plaintiff. Plaintiff made a clear request for an attorney, but the detectives refused to provide him one and continued the interrogation. Plaintiff then confessed to the shootings, providing details about the crimes corroborated by other evidence gathered during the investigation, details which no one but the shooter (and the police) could have known at the time. The district attorney filed a criminal complaint against plaintiff for the murder and attempted murder and plaintiff was held to answer after a preliminary hearing. A judge granted plaintiff's motion to exclude evidence of his confession from being introduced in the state's case-in-chief because the detectives had obtained the confession in violation of plaintiff's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

Within a week after the murder, detective Terry Schillinger extracted the data from David's cellphone producing an extraction report, *i.e.*, the data contained in the cellphone in a readable form. Pursuant to a discovery request, VPD sent the extraction report to the district attorney who immediately produced it to plaintiff's criminal defense counsel. The extraction report contained threatening or eccentric text messages received by Brad David in the weeks leading up to the shootings from Hope McKinney, a former or current girlfriend of Brad David at the time. The text messages arguably evidenced a motive or desire by McKinney to commit the crimes at issue and thus were exculpatory for plaintiff. Plaintiff's public defender received the extraction report from the district attorney containing all of the data recovered from

David's cellphone, including the McKinney text messages, more than five months before plaintiff's June 2017 preliminary hearing.

In May 2017, detective Caitham reviewed the extraction report created by detective Schillinger. Caitham wrote a report about the data extracted from David's phone. Caitham's report stated that Caitham did not "locate any evidence pertaining to this investigation," but Caitham "did note text conversations between v-David and v-Jackson and their relationship." Caitham's report omitted any reference to the McKinney text messages. Caitham's report was produced to the public defender.

The state tried its case against plaintiff for the murder of Jackson and attempted murder of David in April 2019, without the benefit of plaintiff's detailed confession. Plaintiff's public defender introduced the McKinney text messages at the trial. The jury acquitted plaintiff of both charges.

Not satisfied with his freedom, plaintiff filed this lawsuit in June 2020, followed by a first, then second, amended complaint. Plaintiff asserted claims under 42 U.S.C. Section 1983 for malicious prosecution, fabrication of evidence, and failure to disclose exculpatory evidence under *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014), against detectives Caitham, Rose, Schillinger, and detective Kevin Barreto. Plaintiff also asserted a claim under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), against the City of Vallejo predicated on the underlying claims against the individual officers. After conducting depositions, plaintiff's counsel stipulated to dismiss with prejudice detectives Schillinger and Barreto and the city.

Defendants Caitham and Rose then moved for summary judgment. An order granted summary judgment to defendants on all claims and final judgment followed. Defendants now move for attorney's fees under 42 U.S.C. Section 1988. This order follows full briefing but no hearing.

## ANALYSIS

42 U.S.C. Section 1988 "allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under [Section] 1983." *Fox v. Vice*, 563 U.S. 826, 832–33 (2011). "When a plaintiff succeeds in remedying a

civil rights violation . . . he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority. He therefore should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action. Fee-shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights, and holds to account a violator of federal law." *Id.* at 833 (cleaned up).

The same standard does not apply, however, to a *defendant* who prevails against a Section 1983 claim because awarding fees against civil rights plaintiffs "simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement" of the civil rights laws. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The Supreme Court has stated that in enacting Section 1988, "Congress sought 'to protect defendants from burdensome litigation having no legal or factual basis.'" *Fox*, 563 U.S. at 833 (citing *Christiansburg*, 434 U.S. at 420). Thus, a prevailing defendant may only recover attorney's fees when "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or "that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, at 421–22.

In service of the important policy objective of promoting vigorous enforcement of the civil rights laws, our court of appeals has established a stringent standard for showing that a civil rights claim was frivolous. Under that standard, a claim was *not* frivolous if it "raised a question that was not answered clearly by [Ninth Circuit] precedent. . . ." *Gibson v. Office of Atty. Gen., State of California*, 561 F.3d 920, 929 (9th Cir. 2009).

In *Gibson*, the Office of the Attorney General of the State of California (OAG) maintained a policy requiring its lawyer-employees to obtain prior approval before engaging in the private practice of law. The plaintiff did not obtain such prior approval before filing a private malpractice action against the plaintiff's client's former divorce lawyer. So, the OAG threatened to terminate the plaintiff's employment if she did not withdraw from the representation. The plaintiff sued the OAG under Section 1983, asserting that the OAG's policy constituted an impermissible prior restraint on speech. The district court dismissed the

4

action, finding that the plaintiff had failed to allege that she had engaged in any protected First Amendment activity. The district court found the claim to be frivolous, so it awarded the OAG attorney's fees under Section 1988.

Our court of appeals affirmed dismissal of the action but reversed the award of attorney's fees. *Gibson* held, first, that "[f]iling a legal malpractice claim against a private lawyer in connection with a private divorce matter is not an 'issue of public concern,'" and, therefore, was "not constitutionally protected speech in the context of public employment." *Id.* at 926.

*Gibson* next held that the OAG's policy requiring its lawyer-employees to obtain prior approval before engaging in private practice was not an improper prior restraint on speech. *Gibson* reversed the award of attorney's fees on the ground of this second holding, stating:

> Plaintiffs' argument that the OAG's policy is a prior restraint on speech lies at the heart of their action. Although we agree with the approach taken by the *Williams* [*v. IRS*, 919 F.2d 745 (D.C. Cir. 1990)] case, no similar precedent in our circuit would have signaled to Plaintiffs that they should not bring this claim at all. Because Plaintiffs raised a question that was not answered clearly by our precedent, we hold that their claim was not frivolous . . . .

*Id.* at 929.

Thus, with respect to determining frivolousness, *Gibson* provided three important rules. *First*, *Gibson* stated:

> We have not addressed precisely whether a public employer's policy regulating its employees' outside employment activities is a prior restraint on the employee's speech, but our decision in *Hudson v. Craven*, 403 F.3d 691 (9th Cir. 2005), provides some guidance to us.

*Id.* at 926–27. But *Hudson* did not clearly answer the precise question presented in *Gibson*: "[W]hether a public employer's policy regulating its employees' outside employment activities is a prior restraint on the employee's speech . . . ." *Ibid.* So, if the difference between a legal question presented by a claim is less than or equal to the difference between the questions presented by *Gibson* and *Hudson*, the claim was not frivolous. In other words, if the difference between the closest applicable Ninth Circuit precedent and a question presented by a claim is greater than the difference between *Gibson* and *Hudson*, the claim was not frivolous.

*Second*, in *Gibson*, that the plaintiff spoke on an issue of public concern was a threshold showing necessary to succeed on the First Amendment retaliation claim.  As noted, *Gibson* had already determined that because litigating a legal malpractice claim against a private lawyer arising out of a private divorce matter was not an issue of public concern, the claim failed at the threshold.  Nonetheless, *Gibson* assumed that the plaintiff had spoken on an issue of public concern, thereby meeting the threshold for protected speech, and went on to address the question of the OAG's policy directly.  *Id.* at 927.  And because that legal question had not been "answered clearly" by then-extant Ninth Circuit precedent, the First Amendment claim was not frivolous.  *Id.* at 929.  So, under *Gibson*, even if a claim raised questions as to some of its elements, even a threshold element, that were clearly foreclosed by Ninth Circuit precedent, as long as the claim "raised *a* question that was not answered clearly by [Ninth Circuit] precedent," the claim was not frivolous.  *Id.* at 929 (emphasis added).

*Third*, the relevant precedent must be Ninth Circuit precedent.  Out-of-circuit precedent does not count as binding, no matter how directly on point.

Finally, in *Fox v. Vice*, the Supreme Court explained the standard for awarding fees when a plaintiff has asserted both frivolous and non-frivolous claims:

> Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. Or what is the same thing stated as a but-for test:  Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim.

563 U.S. at 836.  This is important here because defendants have failed to allocate their fees claim-by-claim.  Thus, if any of plaintiff's claims were not frivolous, defendants may not recovery *any* attorney's fees because they cannot show they incurred those fees because of, but only because of, a frivolous claim.  *Ibid.*; *Harris v. Maricopa Cnty. Sup. Ct.*, 631 F.3d 963, 971 (9th Cir. 2011).

\*            \*            \*

"To prevail on a [Section] 1983 claim of deliberate fabrication, a plaintiff must prove (1) that the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.  To establish the second element of causation, the

6

1  plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning
2  that the injury would not have occurred in the absence of the conduct; and (b) the act was the
3  'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a
4  reasonable person would see as a likely result of the conduct in question." *Spencer v. Peters*,
5  857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

6  In addition, where, as here, the plaintiff introduced only indirect evidence, as opposed to
7  direct evidence, of *deliberate* fabrication, the plaintiff must also

> point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

*Spencer*, 857 F.3d at 799 (quoting *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)).

Here, plaintiff's fabrication of evidence claim was premised entirely on Caitham's report summarizing the contents of Brad David's cellphone. Caitham's report, as noted, stated that he did not "locate any evidence pertaining to this investigation," but he "did note text conversations between v-David and v-Jackson and their relationship."

The summary judgment order found as a matter of law that those statements did not constitute fabrication of evidence (Order at 16–17). The order cited *O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021), which stated: "*Deveraux* held that 'withholding exculpatory evidence . . . cannot in itself support a deliberate-fabrication-of-evidence claim.' Deliberate fabrication, in other words, must mean something more than a mere omission." *O'Doan*, 991 F.3d at 1045 (citing *Deveraux*, 263 F.3d at 1079).

*O'Doan* would seem to clearly answer the question presented by plaintiff's fabrication of evidence claim. That is, the holding that withholding exculpatory evidence cannot in itself support a deliberate fabrication of evidence claim would seem to clearly foreclose a fabrication claim based solely on a police officer's statement that he was unable to locate evidence

1 pertaining to a case within a body of evidence (recall that defendants timely produced all of the underlying evidence).

Nonetheless, this order finds that plaintiff's fabrication of evidence claim was not frivolous within the meaning of *Gibson* for three reasons. *First*, our court of appeals did not issue *O'Doan* until March 2021, whereas plaintiff filed his complaint in June 2020. Assuming, without deciding, that *O'Doan* clearly answered the legal question presented by plaintiff's claim such that continuing to litigate the claim after *O'Doan* was frivolous, defendants have not segregated their fees incurred after that point so they cannot meet the but-for test of *Fox v. Vice*.

*Second*, this order finds that before *O'Doan*, the question raised by plaintiff's fabrication of evidence claim was not answered clearly by Ninth Circuit precedent. In particular, in *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101 (9th Cir. 2010), our court of appeals stated:

> If, under *Deveraux*, an interviewer who uses coercive interviewing techniques that are known to yield false evidence commits a constitutional violation, then an interviewer who deliberately mischaracterizes witness statements in her investigate report also commits a constitutional violation. Similarly, an investigator who purposefully reports that she has interviewed witnesses, when she has actually only attempted to make contact with them, deliberately fabricates evidence.

*Id.* at 1111.

Here, plaintiff repeatedly pointed out that detective Caitham read the entire extraction report of victim David's cellphone which contained the exculpatory text messages. From this, plaintiff argued, it could be inferred that detective Caitham deliberately misstated that he did not "locate any evidence pertaining to this investigation," despite knowing that the text messages were, in fact, relevant. This argument was meritless, but arguably it found the weakest of support in the above language from *Costanich* that an investigator "who deliberately *mischaracterizes* witness statements in h[is] investigative report also commits a constitutional violation." *Ibid.* (emphasis added).

Yes, it is true that the language would have to have been read completely out of context and the argument ignores the fact that Caitham's report did not *mischaracterize* any evidence at all but only expressed the result of his own subjective review that *he* did not locate any relevant evidence. Nonetheless, our court of appeals has "repeatedly cautioned that district courts should not engage in post hoc reasoning, awarding fees simply because a plaintiff did not ultimately prevail. This admonition applies even in cases which are resolved at summary judgment . . . ." *Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1266–67 (9th Cir. 2015) (citations omitted).

*Third*, defendants have not met their burden on this motion to point to any Ninth Circuit precedent that clearly answered the question presented by plaintiff's fabrication of evidence claim within the meaning of *Gibson*.

As for costs, because defendants are not entitled to an award of attorney's fees, they also are not entitled to nontaxable expenses. *Harris v. Maricopa Cnty. Sup. Ct.*, 631 F.3d at 976.

## CONCLUSION

The hearing on the motion is **VACATED** and, for the foregoing reasons, defendants' motion for attorney's fees and nontaxable expenses is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 28, 2021

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE